UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD ALLEN BELL,

     Plaintiff,

v.                               Case No. 3:22cv4701-MCR-HTC

C.O. JACOBSEN, et al.,

     Defendants.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's proposed second amended civil rights complaint, ECF Doc. 15, "Request for Leave to Amend Complaint," ECF Doc. 16, and Motion for the Appointment of Counsel, ECF Doc. 17. After reviewing Plaintiff's submissions, the Court concludes the "Request for Leave to Amend Complaint" should be granted and the Motion for the Appointment of Counsel should be denied. In addition, after reviewing the second amended complaint under 28 U.S.C. §§ 1915 and 1915A, the undersigned finds it fails to state a claim upon which relief can be granted as to Defendants John Doe 2, Stokes, Dixon, John Doe 3, John Doe 4, and John Doe 5. The undersigned also finds Plaintiff's claims against Defendants Jacobsen and Neel should be dismissed with the exception of his Eighth

Amendment individual capacity claims against Jacobsen and Neel for their failure to protect him from an attack by another inmate.

## I.    BACKGROUND

Plaintiff Richard Allen Bell, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Charlotte Correctional Institution.  His second amended complaint brings claims based on events which allegedly occurred at Santa Rosa Correctional Institution ("SRCI") and names eight Defendants: (1) Officer D. Jacobsen[1]; (2) Officer John Doe 2; (3) Lieutenant Neel; (4) Lieutenant Stokes; (5) FDOC Secretary Ricky Dixon; (6) Warden John Doe 3; (7) Assistant Warden of Operations John Doe 4; and (8) Colonel John Doe 5.  ECF Doc. 15.  The second amended complaint sets forth the factual allegations which follow, the truth of which are accepted for purposes of this Order and Report and Recommendation.

Plaintiff starts the Statement of Facts by detailing events that allegedly occurred at Columbia Correctional Institution in 2016 and 2017.  However, he does not seek relief for any of those events, nor could he, as the claims would be barred by the applicable 4-year statute of limitations.  Thus, the Court will summarize

---

[1] Plaintiff has alternated between identifying the Defendant as "Jacobson" and "Jacobsen." *Compare* ECF Docs. 1 and 8 *with* ECF Doc. 15.  Because the second amended complaint identifies the Defendant as "Jacobsen," the Court will use that spelling moving forward.

herein only those allegations relevant to the Defendants against whom Plaintiff is seeking relief.

Plaintiff arrived at SRCI in February 2020.  In early August 2020, inmate Rashan Mike was assigned to be Plaintiff's cellmate.  Plaintiff "immediately noticed" Mike was "mentally disturbed and unstable."  Mike "often talked to himself", and, when he heard others talking, he believed they were "speaking cryptically" and "plotting on him."  These delusions often made Mike hostile to Plaintiff and other inmates.  Throughout August, Plaintiff and Mike had "several very hostile verbal altercations that nearly turned physically violent" due to Mike's paranoia.

On August 25, 2020, Mike showed Plaintiff documents related to his criminal case; Mike told Plaintiff "he was serving a life sentence for assaulting [a law enforcement officer] in [a] county jail with a seatbelt cutter knife because he believed the officer was plotting to harm him."  The next day, Plaintiff requested a cell transfer through a grievance, citing Mike's mental health, his threats to kill Plaintiff, and his criminal history.  Plaintiff did not receive a response to the grievance.

On August 30, 2020, outside the presence of Mike, Plaintiff told Defendant Jacobsen about Mike's mental health issues, his threats toward Plaintiff, his criminal history, and the verbal altercations between Mike and Plaintiff.  Jacobsen acknowledged he knew about Mike's mental health and paranoia but refused to grant

Plaintiff a cell transfer, stating: "No. Neither of you are getting moved! Either get along or go ahead and kill each other.  And I'm going to tell the other shifts not to move you either."

On the same day, as Jacobsen escorted Mike back to his cell, Jacobsen told Mike that Plaintiff had stated prison officials "were either going to move [Mike] or he was going to 'fuck [Mike] up.'"  Mike subsequently confronted Plaintiff about Jacobsen's statement; although Mike "wanted to fight," Plaintiff "was able to defuse the situation" by admitting he had asked Jacobsen for a transfer but denying he had threatened Mike.  After this incident, Mike "started acting even more paranoid and jumpy . . . anytime . . . Plaintiff moved around the cell[.]"

On September 3, 2020, Mike asked Plaintiff for help writing a grievance, indicating he knew Plaintiff "was good at filing grievances and lawsuits" because he had heard about it from other inmates.  Because nearly two years had passed since the dismissal of his previous lawsuit, Plaintiff does not believe inmates told Mike this information, but instead correctional officers did so to "depict the Plaintiff as a snitch."

A couple of days later, Plaintiff spoke with Defendant Neel while Mike was away at a dental call-out.  Plaintiff told Neel about "his ordeal with his current cellmate," Jacobsen's "instigation," and the grievance that went unanswered.  Neel denied Plaintiff's request for a cell transfer, stating, "We aren't doing any moves."

On September 9 or 10, Jacobsen gave Mike "an extra tray [at mealtime] and then allowed him to keep the extra hard tray at tray pick up." Plaintiff encouraged Mike to finish eating and return the tray because Plaintiff was worried they would be subject to disciplinary action if a tray was found in their cell after mealtime. Mike responded, "No, it's okay. Jacobsen knows what's up. He straight. I'll just push it back at breakfast."

In the early morning hours of September 11, 2020, Mike attacked Plaintiff with the food tray as he slept. Mike then pulled Plaintiff down from the top bunk, which resulted in Plaintiff's head slamming into the floor. Mike "recommenced . . . beating the Plaintiff in the face with the tray for an undetermined amount of time."

At approximately 3:30 a.m., Defendant John Doe 2 heard noise coming from Plaintiff's cell and looked through the cell window to see Mike striking Plaintiff. John Doe 2 ordered Mike to stop but did not administer chemical agents. After John Doe 2 summoned additional officers, Plaintiff's unconscious body was removed from the cell to await medical treatment. Plaintiff received some treatment at SRCI but was then moved to a nearby hospital where he remained in a coma for nearly two weeks. As a result of Mike's attack, Plaintiff suffered a broken jaw, a broken right eye socket, and a broken nose, as well as an injury to his right eye, the loss of three teeth, damage to his gums, lacerations, and a traumatic brain injury.

After receiving treatment at the hospital, Plaintiff was relocated to SRCI's medical infirmary to await a transfer to the FDOC's Reception and Medical Center. While in the infirmary, Plaintiff submitted two informal grievances regarding Mike's attack, Jacobsen's instigation, and Neel's indifference. "Neither of these grievances to the Colonel and Inspector General were answered." After being transferred to the Reception and Medical Center, Plaintiff attempted to submit another set of informal grievances to the Colonel and Inspector General at SRCI. When he failed to receive a response to these grievances, Plaintiff filed an informal grievance with the Assistant Warden at SRCI but that grievance also failed to generate a response. Plaintiff then attempted to file a formal grievance and a grievance appeal, but both of those grievances were returned without action based on Plaintiff's failure to comply with FDOC regulations.

Over a year after the incident, Plaintiff spoke with an inmate who witnessed the September 11, 2020 attack; the inmate confirmed John Doe 2 had removed the bloody tray from Plaintiff's cell and told Defendant Stokes that it was the weapon used in the attack. Neither John Doe 2 nor Stokes cataloged the tray as evidence and John Doe 2 did not mention it in the disciplinary report he wrote Mike for assaulting Plaintiff.

Based on the foregoing, Plaintiff seeks to bring causes of action labeled as follows: (1) conspiracy; (2) conspiracy to deny Plaintiff access to the court; (3)

failure to protect; (4) failure to protect/bystander's liability; (5) supervisory indifference, failure to train, tacit authorization; and (6) supervisory indifference, failure to train, tacit authorization. ECF Doc. 15 at 14-16. As relief, Plaintiff seeks, from each Defendant, $150,000 in compensatory damages and $150,000 in punitive damages. *Id.* at 14, 17. He also seeks an injunction requiring the FDOC to house him alone. *Id.* at 18.

## II.    LEGAL STANDARD

Because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking relief from a governmental entity, the Court must dismiss his complaint, or any portion thereof, if it determines it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. § 1915A. The Court must read Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and conclusory allegations are not entitled to a presumption of truth. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

## III.    DISCUSSION

### A.    "Request for Leave to Amend Complaint"

Plaintiff has submitted a document titled "Request for Leave to Amend Complaint," through which he asks the Court for permission to file a second amended complaint that adds Defendants and claims.  As an initial matter, Plaintiff is advised that all requests for relief must be made by a properly styled motion.  *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *see also* N.D. Fla. Loc. R. 15.1(B) ("When a pleading may be amended only by leave of court, the amending party must file a motion for leave to amend and must simultaneously file the proposed amended pleading itself.").  In this instance, however, the Court will treat Plaintiff's "Request" as a motion to amend the complaint.  However, the Court may not do so in the future and future deficient pleadings may be returned to Plaintiff without action or filing.

Plaintiff's motion to amend the complaint is granted.  The Court notes it ordered Plaintiff to file a second amended complaint on May 17, 2022.  ECF Doc. 13.  The Court will screen the second amended complaint Plaintiff submitted pursuant to 28 U.S.C. §§ 1915, 1915A.

### B.    Motion for Appointment of Counsel

Plaintiff's Motion for the Appointment of Counsel asks the Court to appoint him counsel, claiming: (1) he is unable to afford counsel; (2) the issues involved in

the case are complex; (3) he is a close management inmate, which limits his access to the law library; (4) the four law firms he asked to represent him have either declined or not responded; and (5) he has limited knowledge of the law. ECF Doc. 17.

"A plaintiff in a civil case has no constitutional right to counsel." *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). According to the *in forma pauperis* statute, 28 U.S.C. § 1915, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The statute, however, does not allow the Court to require or "appoint" an unwilling attorney to represent an indigent litigant. *See Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296 (1989) (holding that 28 U.S.C. § 1915 does not authorize a federal court to require an unwilling attorney to represent an indigent litigant in a civil case; emphasizing that Congress used the word "request" in § 1915, not the word "assign" or "appoint"). A litigant requesting counsel must make two threshold showings: (1) that he made a genuine effort to secure counsel himself; and (2) that his case presents exceptional circumstances. *See Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982); *Bass, supra*.

Plaintiff states he has contacted four law firms seeking representation; he has attached to his motion letters from three of those firms declining to take his case and asserts he has not received a response from the fourth. Regardless, Plaintiff has not

demonstrated exceptional circumstances warranting a judicial request for counsel in this case. Among several factors for a court to consider in determining whether exceptional circumstances exist are: (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to adequately investigate the case; and (4) whether evidence will consist in large part of conflicting testimony as to require skill in the presentation of evidence and in cross examination. *See Ulmer*, 691 F.2d at 213. Whether exceptional circumstances exist is left to the sound discretion of the court. *See Steele v. Shah*, 87 F.3d 1266, 1270 (11th Cir. 1996).

This case involves a relatively straightforward Eighth Amendment failure to protect claim. Although Plaintiff has attempted to bring several claims that are subject to dismissal, his submissions are coherent and demonstrate he can adequately present his failure to protect claim. And Plaintiff's assertions regarding his limited knowledge of the law and limited access to legal resources are not exceptional; they are common to most prisoner litigants. Furthermore, Plaintiff's concerns about his ability to obtain evidence through discovery are premature, as the Defendants have not been served and the Court has not entered an order permitting the parties to engage in discovery. Thus, the Court does not find exceptional circumstances exist warranting a judicial request for counsel at this time, and Plaintiff's motion is denied.

C.    **Plaintiff has not stated a conspiracy claim**

In his first two causes of action, Plaintiff suggests Defendants Jacobsen, Neel, John Doe 2, and Stokes conspired with each other to retaliate against him and deny him access to the courts.  ECF Doc. 15 at 14-15.  However, Plaintiff's conspiracy claims are vague and conclusory; for example, nowhere in the complaint does Plaintiff suggest Jacobsen—the Defendant he identifies as instigating Mike's attack—communicated with any of the other Defendants.  *See Collins v. Bates*, 2018 WL 5090845, at *7 (11th Cir. 2018) (finding the plaintiff's "vague and conclusory allegation that all of the defendants conspired against him was insufficient to establish the existence of a conspiracy for purposes of establishing a §§ 1983, 1985, or 1986 violation"); *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement, which presupposes communication.").

Furthermore, Plaintiff's conspiracy claims are barred by the intracorporate conspiracy doctrine.  "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. . . . [U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).  "The

doctrine applies to public entities such as state agencies and [their] personnel."
*Claudio v. Crews*, 2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014).

Here, all the Defendants Plaintiff identifies as being involved in a conspiracy
are FDOC employees. No outsiders are involved. The subjects of their alleged
conspiracy—retaliating against an inmate by failing to protect him and mishandling
an investigation into an inmate attack—involve job-related functions within
Defendants' scope of employment as correctional officers. *See Grider v. City of
Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (recognizing "that one might
reasonably believe that violating someone's constitutional rights is never a job-
related function" but noting "[t]he scope-of-employment inquiry is whether the
employee . . . was performing a function that, but for the alleged constitutional
infirmity, was within the ambit of the [employee's] scope of authority (i.e., job-
related duties) and in furtherance of the employer's business"). Therefore, Plaintiff
cannot state a conspiracy claim against Defendants Jacobsen, Neel, John Doe 2, and
Stokes.

Plaintiff also references 42 U.S.C. § 1985, ECF Doc. 15 at 15, which
"provides a cause of action for victims of conspiracies aimed at interfering with civil
rights."[2] *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021). A claim under either

---

[2] Plaintiff does not specify which subsections of § 1985 he intended to invoke, but only subsections
(2) and (3) could apply to his allegations, as subsection (1) addresses conspiracies to prevent
federal employees from performing their duties.

§ 1985(2) or (3) "requires the plaintiff to show that the conspiracy was motivated by 'racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiff attempts to make this showing by asserting Defendants discriminated against inmates, "as if inmates are a sub-human race and do not deserve equal protection of the law." ECF Doc. 15 at 15. But inmates are not the type of class the statute contemplates protecting. *See White v. Berger*, 709 F. App'x 532, 538 (11th Cir. 2017) (Section 1985 "protects individuals from conspiracies to harm them motivated by their membership in classes having common characteristics of an inherent nature—i.e., those kinds of classes offered special protection under the equal protection clause.") (quotation marks and citation omitted); *cf. Williamson v. Ala. Dep't of Mental Health and Mental Retardation*, 2021 WL 3603456, at *25 (N.D. Ala. Aug. 13, 2021) (rejecting conspiracy claim based on animus toward law enforcement officials because "[t]o the Court's knowledge, no Supreme Court or Eleventh Circuit case has held or implied that 'law enforcement officers' is a class protected by § 1985(3) or by the second clause of § 1985(2)."). Thus, in addition to being barred by the intracorporate conspiracy doctrine, Plaintiff's conspiracy claims under § 1985 fail for the additional reason that he has not shown Defendants' actions were motivated by the requisite class-based discriminatory animus.

### D.    Plaintiff has not stated a First Amendment retaliation claim

Plaintiff alleges Defendants Jacobsen, Neel, John Doe 2, and Stokes conspired to retaliate against him for filing grievances and a civil action.  ECF Doc. 15 at 14-15.  To state a First Amendment retaliation claim under § 1983, an inmate must show: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Here, Plaintiff has not established a causal relationship between his grievances and civil suit, and the actions of Defendants Jacobsen, Neel, John Doe 2, and Stokes. Plaintiff does not allege these Defendants were aware of any of his grievances or his civil suit before the events of September 2020.  Although Plaintiff filed grievances relating to incidents occurring at another institution in 2016 and a civil suit in the Middle District of Florida in 2017,[3] those matters occurred well before he arrived at SRCI in February 2020.  Thus, it is unclear how the employees of SRCI would have been aware of those prior grievances or lawsuit.  And although Plaintiff believes correctional officers told Mike that Plaintiff filed grievances and lawsuits, that is

---

[3] *See Bell v. Waters*, M.D. Fla. Case No. 3:17cv1217-MMH-JK.  Also, as stated above, for judicial efficiency the Court did not include in the factual summary Plaintiff's allegations regarding those prior events.

based on Plaintiff's speculation. Because Plaintiff has not established these Defendants' actions were motivated by their knowledge of his protected speech, he cannot state a First Amendment retaliation claim.

### E.    Plaintiff has not stated a First Amendment access to the courts claim

Plaintiff alleges Defendants John Doe 2 and Stokes impeded his access to the courts by removing the food tray from his cell following Mike's attack and by omitting reference to the tray in FDOC records. Plaintiff asserts these actions will preclude him from proving his first and third causes of action in this case.

"The doctrine of standing requires that an inmate alleging a violation of the right of access to the courts must show an actual injury." *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998). In order to show an actual injury, a plaintiff must provide evidence that the "prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *see also Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d. 1237, 1271 (11th Cir. 2010) ("The allegations about the underlying cause of action must be specific enough to give fair

notice to the defendants and must 'be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope.'") (quoting *Christopher*, 536 U.S. at 416).

Plaintiff's access to the courts claim fails because he has not shown the actions of Defendants John Doe 2 and Stokes have prevented him from pursuing nonfrivolous claims. Although Plaintiff argues the concealment of the food tray will hinder his ability to prove his first cause of action—i.e., his claim that Defendants conspired to retaliate against him for filing grievances and a lawsuit—as explained above, *supra* Sections III.C. & III.D., the claim is meritless and subject to dismissal for multiple reasons, including that Plaintiff failed to allege an agreement between Defendants or the elements of a retaliation claim, and that his claim is barred by the intracorporate conspiracy doctrine. Furthermore, the concealment of the tray did not prevent Plaintiff from presenting his conspiracy to retaliate claim to the Court, and the undersigned assumed for purposes of this Order and Report and Recommendation that all of Plaintiff's allegations regarding the tray were true.

Likewise, the claim Jacobsen failed to protect Plaintiff and encouraged Mike's attack cannot serve as the basis for Plaintiff's access to the courts claim because Plaintiff has not been prevented from presenting it and is in fact presenting it in this case. *See Root v. Towers*, 238 F.3d 423 (6th Cir. 2000) ("No actual injury occurs without a showing that such a claim has been lost or rejected, or that the presentation

of such a claim is currently being prevented.") (citing *Lewis v. Casey*, 518 U.S. 343, 354-56 (1996)).

The concealment of the food tray and its omission from records describing Mike's attack do not make Plaintiff's failure to protect claim ineffective. Plaintiff personally observed the events leading up to Mike's attack, including his interactions with both Jacobsen and Mike. He also alleges: (1) he recalls seeing a dark object in Mike's hand during the attack; (2) medical personnel at the hospital told him he had been hit with a tray; and (3) he has an affidavit from an inmate who saw a bloody tray being removed from Plaintiff's cell and heard John Doe 2 state it was used by Mike to strike Plaintiff. ECF Doc. 15 at 11-13. Because Plaintiff has not shown Defendants' actions made his access to the courts ineffective, that claim is subject to dismissal.[4]  *See Chappell v. Rich*, 340 F.3d 1279, 1283-84 (11th Cir. 2003) ("Although access to the concealed evidence might have strengthened their case, the Chappell children do not allege that they were or would have been prevented from filing a wrongful death suit within the statute of limitations period, nor that the

---

[4] Plaintiff also suggests the concealment of the tray will limit his ability to counter a claim of qualified immunity. ECF Doc. 15 at 15. Such a contention is meritless, as Plaintiff has evidence that a tray was used in the attack and a qualified immunity analysis turns on whether a defendant violated clearly established law. *See Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) ("We focus on two questions: first, . . . whether there is an underlying constitutional violation, [and] second, . . . whether the law the public official is alleged to have violated was clearly established at the time of incidents giving rise to the suit.") (quotation marks and citation omitted).

Defendants' actions would have made such a suit inadequate, ineffective, or not meaningful.").

### F.    Plaintiff has not stated a supervisory liability claim

Plaintiff seeks to impose supervisory liability on Defendants Dixon, Warden John Doe 3, Assistant Warden of Operations John Doe 4, and Colonel John Doe 5 (collectively, "Supervisory Defendants") for their failure to prevent Jacobsen and Neel's alleged misconduct. However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

As an initial matter, the second amended complaint's Statement of Facts contains no allegations specifically relating to Dixon or the Warden and the only allegations regarding the Assistant Warden and Colonel relate to their failure to respond to grievances Plaintiff submitted *after* Mike's attack.  ECF Doc. 15 at 12. However, to the extent Plaintiff is bringing a claim based on Defendants' failure to respond to his grievances, that claim fails as "an inmate has no constitutionally-protected liberty interest in access to [a grievance] procedure." *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (citations omitted); *accord Flowers v. Tate*, 925 F.2d 1463 (6th Cir. 1991) (holding a prisoner "does not have a constitutional right to an effective grievance procedure"); *Langbehn v. Henderson*, 2007 WL 30602, at *2 (N.D. Ga. Jan. 2, 2007) ("A jail may elect to provide a grievance mechanism, but violations of its procedures do not deprive prisoners of federal constitutional rights.") (citations omitted).

In his Statement of Claims, Plaintiff indicates the Supervisory Defendants had notice of the need to take corrective action at SRCI based on grievances and letters he wrote to the Secretary's office, as well as investigation into the FDOC and SRCI prompted by civil litigation.  This alleged notice, however, is not sufficient to hold the Supervisory Defendants liable for the type of failure to protect claim raised here. First, with respect to the Colonel, Assistant Warden, and Warden, Plaintiff did not submit grievances to them regarding the threat posed by Mike or the alleged

misconduct of Jacobsen and Neel before Mike's attack.[5]  Thus, they could not have known of the need to take corrective action to prevent the attack based on those grievances.

With respect to Dixon, the grievances and letters Plaintiff submitted to the Secretary's Office before Mike's attack related to the attack that occurred in December 2016.  ECF Doc. 15 at 8-9.  Those documents were submitted over three years before Mike's attack and concerned a single incident at a different institution from SRCI.  As such, they cannot serve as the notice required to hold Dixon individually liable for failing to prevent Jacobsen and Neel's alleged misconduct. *See Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (holding allegations "that the defendants were on notice because they were aware of his administrative grievances and state court litigation" insufficient to support supervisory liability); *Braddy v. Fla. Dep't of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) ("A few isolated instances of harassment will not suffice" to establish the notice necessary for supervisory liability.).

Plaintiff also suggests the Supervisory Defendants should have been on notice to take corrective action based on the existence of *Harvard v. Inch*, a civil case

---

[5] Plaintiff claims he submitted one grievance expressing concern about sharing a cell with Mike before the September 2020 attack, but he does not indicate to whom it was addressed.  ECF Doc. 15 at 9.  Although Plaintiff says he did not receive a response to the grievance, it did not include allegations related to Jacobsen or Neel and thus could not serve as notice to the Supervisory Defendants of a need to take corrective action.

against the FDOC pending in the Northern District of Florida. That case, however, is about the FDOC's use of isolation; it does not relate to the issue presented here—correctional officers' failure to protect a prisoner from assault by another prisoner. *See Harvard v. Dixon*, N.D. Fla. Case No. 4:19cv212-AW-MAF; *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1259 (N.D. Fla. 2019) ("This case is about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee."). The case, therefore, could not serve as notice of the need to prevent the situation described in Plaintiff's second amended complaint.

Plaintiff also makes a vague allegation regarding the FDOC's "custom and policy to conceal constitutional right violations and criminal acts perpetrated by fellow officers and subordinates." ECF Doc. 15 at 16. Plaintiff, however, has failed to plead specific facts to support the allegation. Thus, the allegation is insufficient to support supervisory liability. *See Hendrix*, 535 F. App'x at 805 (holding allegation that there is "a long standing policy, practice, and custom of treating similarly situated prisoners differently in this application of gain time" was not sufficient to support supervisory liability because the plaintiff did "not plead any specific facts to support this conclusory statement"). Based on the foregoing, Plaintiff cannot state individual capacity claims against the Supervisory Defendants. *See Braddy*, 133 F.3d at 802 ("The standard by which a supervisor is held liable in [their] individual capacity for the actions of a subordinate is extremely rigorous.")

### G.    Plaintiff has not stated a claim against Defendants in their official capacities

In addition to his individual capacity claims, Plaintiff indicates he is suing all Defendants in their official capacities.  ECF Doc. 15 at 3-4.  Plaintiff, however, cannot recover damages from Defendants in their official capacities because, "[u]nder the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Lewis v. Charlotte Corr. Inst. Emps.*, 589 F. App'x 950, 952 (11th Cir. 2014) ("[A] claim for damages against the FDOC officers fails because the state officials sued in their official capacities are immune from such relief.") (citation omitted).

Plaintiff also seeks an injunction requiring the FDOC to house him in a single-person cell.  He claims he is at risk for retaliation from correctional officers due to his prosecution of this case; he asserts being the victim of two inmate attacks has left him paranoid and unable to share a cell with another inmate.  ECF Doc. 15 at 18.

This case, however, is not the appropriate avenue for Plaintiff to obtain the injunctive relief he seeks.  As the Eleventh Circuit has explained, "[a] district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997).  The issues in this case are whether Defendants Jacobsen and Neel violated Plaintiff's Eighth

Amendment rights by failing to protect him from the attack by Mike at SRCI in September 2020. The injunction Plaintiff seeks, however, would require the Court to examine whether the conditions of confinement at his current facility, Charlotte Correctional Institution, are unconstitutional and necessitate housing Plaintiff in a single-person cell. "Moreover, courts generally will not interfere in matters of prison administration, including an inmate's custody status or location of confinement." *Logan v. Spreadly*, 2020 WL 1640085, at *2 (M.D. Fla. Apr. 2, 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) ("[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches . . . not the Judicial.")). Accordingly, because Plaintiff does not have a viable claim for injunctive relief related to the allegations in this case, his official capacity claims against the Defendants should be dismissed.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff has failed to state: (1) a conspiracy claim; (2) a First Amendment retaliation claim; (3) a First Amendment access to the courts claim; (4) a supervisory liability claim; and (5) an official capacity claim. The undersigned finds Plaintiff has stated an Eighth Amendment individual capacity claim against Defendants Jacobsen and Neel based on their failure to protect Plaintiff from the attack by Mike. Thus, Plaintiff will be directed to submit two service copies

of the second amended complaint.  Upon receipt of the service copies, the Court will direct the United States Marshals Service to attempt service on Jacobsen and Neel.

Accordingly, it is ORDERED:

1.     Plaintiff's "Request for Leave to Amend Complaint," ECF Doc. 16, is GRANTED.   The second amended complaint, ECF Doc. 15, is the operative pleading in this case.

2.     Plaintiff's Motion for Appointment of Counsel, ECF Doc. 17, is DENIED.

3.     Plaintiff shall have **twenty-one (21) days** from the date of this Order to submit two service copies of the second amended complaint, ECF Doc. 15.  The service copies must be identical to the second amended complaint filed with the Court and include the attached exhibits.  This case number should be written on the copies.  Alternatively, Plaintiff may submit payment to the clerk at $0.50 per page (a total of $57.00) for the clerk to make two copies of the second amended complaint and attached exhibits.

4.     The clerk is directed to terminate John Doe 1 as a Defendant.

And it is RECOMMENDED:

1.     That Plaintiff's individual capacity claims against Defendants John Doe 2, Stokes, Dixon, John Doe 3, John Doe 4, and John Doe 5 be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) due to

Plaintiff's failure to state a claim upon which relief may be granted and Stokes be terminated as a Defendant.

2.    That Plaintiff's official capacity claims against all Defendants be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) due to Plaintiff's failure to state a claim upon which relief may be granted.

3.    That all of Plaintiff's individual capacity claims against Defendants Jacobsen and Neel be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) due to Plaintiff's failure to state a claim upon which relief may be granted, except for his Eighth Amendment claims against Jacobsen and Neel for their failure to protect Plaintiff from the attack by Mike.

4.    That this case be referred to the Magistrate Judge for further proceedings on Plaintiff's Eighth Amendment individual capacity claims against Defendants Jacobsen and Neel for their failure to protect Plaintiff from the attack by Mike.

At Pensacola, Florida, this 16th day of June, 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.