UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD ALLEN BELL,

    Plaintiff,

v.                                          Case No. 3:22cv4701-MCR-HTC

C.O. JACOBSEN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendants' motion to dismiss, which argues Plaintiff failed to exhaust his administrative remedies and failed to state a claim on which relief may be granted; alternatively, Defendants move for a more definite statement under Fed. R. Civ. P. 12(e). ECF Doc. 49. Plaintiff responded in opposition. ECF Doc. 53. After reviewing the parties' submissions and the relevant law, the undersigned concludes Defendants' motion should be denied.

**I.     Background**

Plaintiff Richard Allen Bell, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Charlotte Correctional Institution. He is suing two FDOC employees—Officer Drew Jacobsen and Lieutenant Justin Neel. The second amended complaint sets

forth the following factual allegations, the truth of which are accepted for purposes of this Report and Recommendation.

Plaintiff arrived at Santa Rosa Correctional Institution ("SRCI") in February 2020. In early August 2020, inmate Rashan Mike was assigned to be Plaintiff's cellmate. Plaintiff immediately noticed Mike was "mentally disturbed and unstable." Mike often talked to himself, and, when he heard others talking, he believed they were "speaking cryptically" and "plotting on him." These delusions often made Mike hostile to Plaintiff and other inmates. Throughout August, Plaintiff and Mike had "several very hostile verbal altercations that nearly turned physically violent" due to Mike's paranoia.

On August 25, 2020, Mike showed Plaintiff documents related to his criminal case; Mike told Plaintiff "he was serving a life sentence for assaulting [a law enforcement officer] in [a] county jail with a seatbelt cutter knife because he believed the officer was plotting to harm him." The next day, Plaintiff requested a cell transfer through a grievance, citing Mike's mental health, his threats to kill Plaintiff, and his criminal history. Plaintiff did not receive a response to the grievance.

On August 30, 2020, outside the presence of Mike, Plaintiff told Defendant Jacobsen about Mike's mental health issues, his threats toward Plaintiff, his criminal history, and the verbal altercations between Mike and Plaintiff. Jacobsen acknowledged he knew about Mike's mental health and paranoia but refused to grant

Plaintiff a cell transfer, stating: "No. Neither of you are getting moved! Either get along or go ahead and kill each other. And I'm going to tell the other shifts not to move you either."

On the same day, as Jacobsen escorted Mike back to his cell, Jacobsen told Mike that Plaintiff had stated prison officials "were either going to move [Mike] or he was going to 'fuck [Mike] up.'" Mike subsequently confronted Plaintiff about Jacobsen's statement; although Mike "wanted to fight," Plaintiff "was able to defuse the situation" by admitting he had asked Jacobsen for a transfer but denying he had threatened Mike. After this incident, Mike "started acting even more paranoid and jumpy . . . anytime . . . Plaintiff moved around the cell[.]"

On September 3, 2020, Mike asked Plaintiff for help writing a grievance, indicating he knew Plaintiff "was good at filing grievances and lawsuits" because he had heard about it from other inmates. Because nearly two years had passed since the dismissal of his previous lawsuit, Plaintiff does not believe inmates told Mike this information, but instead correctional officers did so to "depict the Plaintiff as a snitch."

A couple of days later, Plaintiff spoke with Defendant Neel while Mike was away at a dental call-out. Plaintiff told Neel about "his ordeal with his current cellmate," Jacobsen's "instigation," and the grievance that went unanswered. Neel denied Plaintiff's request for a cell transfer, stating, "We aren't doing any moves."

On September 9 or 10, Jacobsen gave Mike "an extra tray [at mealtime] and then allowed him to keep the extra hard tray at tray pick up." Plaintiff encouraged Mike to finish eating and return the tray because Plaintiff was worried they would be subject to disciplinary action if a tray was found in their cell after mealtime. Mike responded, "No, it's okay. Jacobsen knows what's up. He straight. I'll just push it back at breakfast."

In the early morning hours of September 11, 2020, Mike attacked Plaintiff with the food tray as he slept. Mike then pulled Plaintiff down from the top bunk, which resulted in Plaintiff's head slamming into the floor. Mike "recommenced . . . beating the Plaintiff in the face with the tray for an undetermined amount of time."

At approximately 3:30 a.m., a correctional officer heard noise coming from Plaintiff's cell and looked through the cell window to see Mike striking Plaintiff. The officer ordered Mike to stop but did not administer chemical agents. After additional officers were summoned, Plaintiff's unconscious body was removed from the cell to await medical treatment. Plaintiff received some treatment at SRCI but was then moved to a nearby hospital where he remained in a coma for nearly two weeks. As a result of Mike's attack, Plaintiff suffered a broken jaw, a broken right eye socket, and a broken nose, as well as an injury to his right eye, the loss of three teeth, damage to his gums, lacerations, and a traumatic brain injury.

After receiving treatment at the hospital, Plaintiff was relocated to SRCI's medical infirmary to await a transfer to the FDOC's Reception and Medical Center. While in the infirmary, Plaintiff submitted two informal grievances regarding Mike's attack, Jacobsen's instigation, and Neel's indifference. "Neither of these grievances to the Colonel and Inspector General were answered." After being transferred to the Reception and Medical Center, Plaintiff attempted to submit another set of informal grievances to the Colonel and Inspector General at SRCI. When he failed to receive a response to these grievances, Plaintiff filed an informal grievance with the Assistant Warden at SRCI but that grievance also failed to generate a response. Plaintiff then attempted to file a formal grievance and a grievance appeal, but both of those grievances were returned without action based on Plaintiff's failure to comply with FDOC regulations.

Based on the foregoing, Plaintiff alleges Jacobsen and Neel violated the Eighth Amendment by failing to protect him from the attack by Mike.[1] ECF Doc. 15 at 15. As relief, Plaintiff seeks, from each Defendant, $150,000 in compensatory damages and $150,000 in punitive damages. *Id.* at 14, 17.

---

[1] Plaintiff's second amended complaint named additional defendants and attempted to bring additional claims. Those defendants and claims have been dismissed. ECF Docs. 22, 54.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must read Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and conclusory allegations are not entitled to a presumption of truth, *Iqbal*, 556 U.S. at 681.

## III. Discussion

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See Booth*, 532 U.S. at 741 n.6. Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quotation marks and citations omitted). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id*. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. (citing *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008)).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*. (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

"Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

The grievance procedures promulgated by the FDOC generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

Defendants argue Plaintiff's grievances failed to provide enough detail to alert the FDOC of any wrongdoing by Jacobsen or Neel. The undersigned disagrees. On January 6, 2021, Plaintiff filed a formal grievance which stated, among other things: (1) Plaintiff was grieving FDOC staff's "complicity" in Mike's attack; (2) such complicity violated his Eighth Amendment rights; (3) Mike's psychological issues and violent disposition were well-known to prison staff; (4) Plaintiff told Jacobsen before the attack about the confrontations between him and Mike due to Mike's psychological issues and accusations; (5) Jacobsen responded by saying he would not transfer either inmate and they had to either get along or kill each other; (6) Jacobsen instigated further conflict by falsely telling Mike that Plaintiff said he was going to end up "kicking [Mike's] ass"; (7) Neel refused to move either inmate after Plaintiff spoke with him about Mike; and (8) Mike subsequently attacked Plaintiff.

ECF Doc. 15 at 42-44. While the January 2021 formal grievance does not mention that Jacobsen provided Mike with the tray used in the attack, the included facts were sufficient to alert the FDOC that Plaintiff believed Jacobsen incited Mike to attack Plaintiff, and that Jacobsen and Neel were at fault for failing to arrange a cell transfer or otherwise prevent Mike's attack. Furthermore, after speaking with an inmate who witnessed the aftermath of the September 2020 attack, Plaintiff filed another set of grievances beginning in November 2021 which, at the formal and appeal levels, included an allegation that Jacobsen allowed Mike "to keep a tray past feeding time to utilize in a attack against [Plaintiff] in [his] sleep." *See* ECF Doc. 15 at 49-57. Thus, the undersigned concludes Plaintiff's grievances contained enough detail to exhaust his Eighth Amendment failure to protect claim against Jacobsen and Neel.

Defendants also argue Plaintiff failed to exhaust his administrative remedies because he never filed a timely grievance regarding his allegations. Defendants acknowledge Plaintiff alleges he was in a coma for several weeks after Mike's attack but assert Plaintiff's January 2021 formal grievance was filed more than 90 days from the date of the incident and returned without action.

The undersigned is not persuaded by Defendants' argument. First, as Plaintiff correctly notes, the FDOC did not return any of the relevant grievances for being untimely. Second, as discussed below, the FDOC failed to adhere to its own rules when processing the January 2021 formal grievance.

The FDOC returned the formal grievance without action, claiming it was not in compliance with Fla. Admin. Code r. 33-103.014(f), (g).[2] ECF Doc. 15 at 41. Specifically, the FDOC faulted Plaintiff for either not submitting an informal grievance, not attaching the informal grievance to the formal grievance, or not providing an acceptable reason for not following the rules. *Id.*

The FDOC is required to respond to informal grievances within 15 days of the initial receipt date. Fla. Admin. Code r. 33-103.005(4). Unless an inmate has agreed in writing to an extension, expiration of a time limit at any step in the grievance process entitles the inmate to proceed to the next step of the grievance process. Fla. Admin. Code r. 33-103.011(4). To utilize this bypass provision, the inmate "must clearly indicate this fact when filing at the next step." *Id.*

Plaintiff did just that; at the beginning of his formal grievance, Plaintiff specifically stated:

> There is no informal grievance attached to this formal level because I have made several attempts to file informal level grievances regarding the incident since waking up out of a month long coma induced by the violent incident in September. All to no avail. Not one of my informal grievances have been answered. So I am exercising my Chapter 33 afforded right to proceed to the next level in light of official's inaction.

---

[2] Fla. Admin. Code r. 33-103.014(1)(f) provides that a formal grievance can be returned without a response on the merits if "[t]he inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint."

Case No. 3:22cv4701-MCR-HTC

ECF Doc. 15 at 42.

Thus, Plaintiff complied with the grievance procedures set forth in the FDOC's regulations. He asserts, under penalty of perjury, that he filed multiple informal grievances regarding his allegations that went unanswered. And Defendants have not presented any evidence to contradict this assertion. When Plaintiff did not receive responses to his informal grievances, he proceeded to file a formal grievance. Despite clearly explaining why an informal grievance was not attached to the formal grievance, the FDOC rejected the formal grievance on that basis, without a reasonable explanation, and seemingly in contradiction to its own regulations. Furthermore, Defendants' motion offers no explanation for why the formal grievance was rejected or how that rejection was consistent the FDOC's established grievance procedures.[3] Because Plaintiff's unrebutted evidence indicates the FDOC refused to process his formal grievance in accordance with its own rules, the fact the grievance was returned without action does not require dismissal. *See Ross v. Blake*, 578 U.S. 632, 643 (2016) (noting a prisoner is not required to exhaust unavailable administrative remedies, and a remedy is unavailable when the administrative scheme is so opaque it is incapable of use). Thus,

---

[3] After the formal grievance was returned without action on January 28, 2021, ECF Doc. 15 at 41, Plaintiff filed an appeal on February 3 which included an explanation of why he filed a formal grievance without attaching an informal grievance, *id.* at 46-48. The appeal was returned without action because the formal grievance was determined to be in noncompliance with the rules. *Id.* at 45.

Defendants have not met their burden of showing this case should be dismissed based on Plaintiff's failure to exhaust his available administrative remedies.

B.  **Failure to State a Claim**

Defendants next argue that Plaintiff's allegations fail to state a claim.[4]  ECF Doc. 49 at 10-11.  The Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of the inmates and protect prisoners from violence at the hands of other prisoners." *Washington v. Warden*, 847 F. App'x 734, 737 (11th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). To prevail on an Eighth Amendment failure to protect claim, a plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.  *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citation omitted).

"The first element of a failure-to-protect claim—whether a substantial risk of serious harm existed—is an objective determination.  To show a substantial risk of serious harm, a prisoner must provide evidence that there was a 'strong likelihood' of his injury occurring, because the mere possibility of injury is not enough." *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 F. App'x 769, 775 (11th Cir. 2020) (citations

---

[4] Defendants make only a perfunctory argument regarding Plaintiff's failure to state a claim. They describe the pleading standard articulated in *Twombly*, then state only that "Plaintiff merely makes conclusory allegations and makes no statements of material fact that could support his claims against Defendants."  ECF Doc. 49 at 10-11.  Defendants ignore Plaintiff's factual allegations regarding his interactions with them, and do not even mention the legal standard applicable to a failure to protect claim.

Case No. 3:22cv4701-MCR-HTC

omitted). "The second element of a failure-to-protect claim—deliberate indifference to a substantial risk of harm—has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than gross negligence." *Id.* (citing *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)).

Here, Plaintiff has pleaded factual content which allows the Court to draw the reasonable inference Defendants are liable for failing to protect Plaintiff from the attack by Mike. Plaintiff asserts: (1) Mike suffered from psychological issues which made him paranoid and hostile to other inmates; (2) those issues led to verbal altercations between Plaintiff and Mike which had "nearly turned physically violent"; (3) Mike had a violent disposition and a history of acting upon his paranoia, as he was serving a life sentence for attacking a law enforcement officer with a knife because he believed the officer "was plotting on him"; (4) Mike threatened to kill Plaintiff if he discovered Plaintiff "was plotting on him"; (5) Jacobsen increased the risk to Plaintiff and the tension between the inmates by falsely telling Mike that Plaintiff said officials were either going to move Mike or Plaintiff "was going to 'fuck [Mike] up'"; (6) Mike started "acting even more paranoid and jumpy" after Jacobsen's statement. These allegations are sufficient to show Mike posed a substantial risk of serious harm to Plaintiff.

Plaintiff's allegations also establish Defendants had subjective knowledge of that risk, as he alleges that correctional officers generally would be familiar with an inmate's mental health and criminal history, and he personally told both Defendants about the risk posed by Mike and the facts supporting the existence of the risk. Finally, Plaintiff's allegations suggest Defendants recklessly disregarded the risk posed by Mike. After Plaintiff advised Jacobsen about his issues with Mike, Jacobsen said the inmates would either need to get along or kill each other and he would tell the other shifts not to move either inmate. Jacobsen then stoked the tension between the inmates by telling Mike that Plaintiff had threatened him. Likewise, Neel refused to move either inmate despite knowing about the risk posed by Mike and Jacobsen's instigation. Thus, Plaintiff's complaint states an Eighth Amendment failure to protect claim against both Defendants.

### C. More Definite Statement

As an alternative to dismissal for failure to state a claim, Defendants suggest Plaintiff should be required to amend his complaint to provide a more definite statement. A party may move for a more definite statement of a complaint when it "is so vague or ambiguous that the party cannot reasonably prepare a response. The motion … must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e).

Defendants only assert generally that they want Plaintiff "to clarify what rights Defendants deprived Plaintiff of and explain how Defendants deprived him of those rights." ECF Doc. 49 at 12. They have not pointed out "the defects complained of and the details desired" with any specificity. *See* Fed. R. Civ. P. 12(e). Furthermore, the complaint clearly states Plaintiff believes Defendants violated his rights under the Eighth Amendment by failing to protect him from the attack by Mike. ECF Doc. 15 at 15. And the complaint's factual allegations, described in the preceding section, give Defendants sufficient notice of the basis for the alleged Eighth Amendment violation. Thus, Defendants' request for a more definite statement should be denied.

## IV.  Conclusion

Based on the foregoing, Defendants have not shown Plaintiff failed to exhaust his available administrative remedies. In addition, he has plausibly alleged Defendants violated the Eighth Amendment by failing to protect him from the attack by Mike.

Accordingly, it is RECOMMENDED:

1.  That Defendants' motion to dismiss, or, in the alternative, for a more definite statement, ECF Doc. 49, be DENIED.

2.  That this case be referred to the Magistrate Judge for further proceedings on Plaintiff's Eighth Amendment individual capacity claims against

Defendants Jacobsen and Neel for their failure to protect Plaintiff from the attack by Mike.

At Pensacola, Florida, this 13th day of January, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.