UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD ALLEN BELL,

    Plaintiff,

v.                                                Case No. 3:22cv4701-MCR-HTC

C.O. JACOBSEN, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Richard Allen Bell, a prisoner proceeding *pro se* under 42 U.S.C. § 1983, sues Defendants Drew Jacobsen and Justin Neel for failing to protect him from an attack by his cellmate, Rashan Mike, on September 11, 2020, at Santa Rosa Correctional Institution ("SRCI"). Doc. 15. Before the Court is Defendants' motion for summary judgment, Doc. 90, and Plaintiff's response in opposition, Doc. 101. After considering the parties' submissions, the record, and the relevant law, the undersigned recommends the motion for summary judgment be DENIED, as a genuine dispute of material fact exists regarding whether Defendants subjectively knew Mike posed a substantial risk of serious harm to Plaintiff.

**I.    Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

**II.     Facts**

　　**A.     Plaintiff's Evidence**

Plaintiff's second amended complaint[1] and the declaration he submitted in opposition to Defendants' motion for summary judgment establish the following:

---

[1] Plaintiff's second amended complaint is signed under penalty of perjury and, thus, may be considered as evidence. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and … a separate affidavit is not necessary."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

On August 3, 2020, inmate Rashan Mike was assigned to be Plaintiff's cellmate at SRCI. Doc. 101 at 10. Plaintiff immediately noticed Mike was "mentally disturbed and unstable." Doc. 15 at 9. Mike often talked to himself, and, when he heard others talking, he believed they were "speaking cryptically" and "plotting on him." *Id.* These delusions made Mike paranoid and hostile to Plaintiff and other inmates. *Id.*; Doc. 101 at 10. Between August 1 and August 20, Plaintiff and Mike had several hostile altercations that nearly became physically violent due to Mike's paranoia, "and that led to Mike threatening to kill [Plaintiff] because he believed [Plaintiff] was plotting on him." Doc. 101 at 11.

On approximately August 25, 2020, Mike showed Plaintiff documents related to his criminal case; Mike told Plaintiff "he was serving a life sentence for assaulting a law enforcement officer with a knife because he believed the officer was plotting on him." *Id.* The next day, Plaintiff requested a cell transfer through a grievance, citing Mike's psychological problems, his threats to kill Plaintiff, and his criminal history. *Id.*; Doc. 15 at 9. Plaintiff did not receive a response to the grievance. Doc. 15 at 9.

Around August 30, 2020, while Mike was away taking a shower, Plaintiff told Defendant Jacobsen about Mike's mental health issues, his threats toward Plaintiff, and the verbal altercations between Mike and Plaintiff. Doc. 15 at 9-10; Doc. 101 at 11. Plaintiff also tried to convey the seriousness of the threat posed by Mike and

his propensity to act on his delusions by advising Jacobsen that Mike had assaulted a law enforcement officer with a knife because he believed the officer was plotting on him. Doc. 101 at 11. Jacobsen acknowledged he knew about Mike's mental health and paranoia but refused to grant Plaintiff a cell transfer, stating: "No. Neither of you are getting moved! Either get along or go ahead and kill each other. And I'm going to tell the other shifts not to move you either." Doc. 15 at 9-10.

When Mike returned to the cell from the shower that same day, he confronted Plaintiff about a statement Jacobsen allegedly made to Mike about Plaintiff threatening to "fuck [Mike] up" if Mike was not moved from the cell[2]; although Mike "wanted to fight," Plaintiff "avoided a violent encounter" by denying he made the comment to Jacobsen, getting on the top bunk, and refusing to fight. Doc. 101 at 11. After this incident, Mike "started acting even more paranoid and hostile." *Id.*

On September 5 or 6, Plaintiff spoke with Defendant Neel while Mike was away at a dental call-out. *Id.* at 12. Plaintiff told Neel about his "ordeal" with Mike, including: (1) Mike's psychological issues, which made him paranoid and hostile; (2) his threats to kill Plaintiff because he believed Plaintiff was plotting on him; (3) the details of his criminal case; and (4) that Jacobsen had been told about the

---

[2] Defendants take issue with the inclusion of this statement in Plaintiff's declaration, arguing it is inadmissible hearsay. As will be made clear through the discussion below, the undersigned need not determine whether the statement would be admissible because it is not pertinent to the undersigned's ruling.

situation and had allegedly made comments which increased the tension between the inmates. Doc. 101 at 12. Nevertheless, Neel denied Plaintiff's request for a cell transfer, stating, "We aren't doing any moves." Doc. 15 at 10.

One day between September 5 and 10, Jacobsen allowed Mike to keep a food tray in the cell after tray pick up. Doc. 101 at 12. Plaintiff encouraged Mike to finish eating and return the tray because Plaintiff was worried they would be subject to disciplinary action if a tray was found in their cell after mealtime. Doc. 15 at 10. Mike responded, "No, it's okay. Jacobsen knows what's up. He straight. I'll just push it back at breakfast." *Id.*

Between 12:00 a.m. and 3:00 a.m. on September 11, 2020, Mike attacked Plaintiff with the food tray as he slept. Doc. 101 at 12. Plaintiff woke up and saw Mike standing over him "poised to strike [him] again with something large in his hands, though [he] couldn't tell exactly what it was because the lights were off." *Id.* Mike struck Plaintiff and knocked him unconscious. *Id.* After the attack ended, another inmate, Isaac Day, saw an officer remove a bloody tray from Plaintiff's cell.[3] *Id.* at 13.

---

[3] Plaintiff included two declarations from Day with his opposition. In both declarations, Day states he was at SRCI on September 11, 2020, saw a bloody tray being taken out of Plaintiff's cell after the incident with Mike, and overheard officers talking about the tray. Doc. 101 at 53, 58. Defendants, however, rely on an affidavit from Christy Padgett, a Sergeant at SRCI, to show that Day's declarations and Plaintiff's own assertion that Day was at SCRI on September 11, 2020, are false because Day had been transferred to Hamilton Correctional Institution on August 27. Doc. 90-3 at 1-4. Whether Mike used a tray, had a tray, or Jacobsen gave him a tray to use during the incident are simply not outcome determinative. The key questions regarding Plaintiff's failure to

As a result of Mike's attack, Plaintiff was in a coma for almost two weeks; he suffered a broken jaw, broken nose, broken eye socket, a trauma induced cataract, the loss of three teeth, two cranial fractures, numerous lacerations to his face and head, massive brain swelling and hemorrhaging, and some nerve damage.  Doc. 101 at 12.

## B.    Defendants' Evidence

Defendants Jacobsen and Neel have submitted affidavits indicating they have no recollection of Plaintiff, Mike, or the events described in the second amended complaint but aver they "would never ignore the safety of an inmate if [they were] made aware that his cellmate posed a substantial risk of serious injury to him." Docs. 90-1 & 90-2.

## III.   Discussion

### A.    Eighth Amendment

The Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of the inmates and protect prisoners from violence at the hands of other prisoners." *Washington v. Warden*, 847 F. App'x 734, 737 (11th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  To prevail on an Eighth Amendment failure to protect claim, a plaintiff must show: (1) a substantial

---

protect claim are whether Defendants subjectively knew Mike posed a substantial risk of serious harm to Plaintiff, and whether their failure to take any action after learning of the risk was unreasonable.  Thus, those are the issues the undersigned will address.

risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citation omitted).

"The first element of a failure-to-protect claim—whether a substantial risk of serious harm existed—is an objective determination. To show a substantial risk of serious harm, a prisoner must provide evidence that there was a 'strong likelihood' of his injury occurring, because the mere possibility of injury is not enough." *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 F. App'x 769, 775 (11th Cir. 2020) (citations omitted). "The second element of a failure-to-protect claim—deliberate indifference to a substantial risk of harm—has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than gross negligence." *Id.* (citing *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)).

Defendants argue "[t]here is no record evidence or reasonable inference that Defendants acted with deliberate indifference to Plaintiff and knowingly placed Plaintiff at substantial risk of serious injury." Doc. 90 at 10. They focus on the subjective knowledge requirement, claiming they did not know Mike posed a substantial risk of serious harm to Plaintiff and asserting the Court's deliberate

indifference analysis must consider the "reality of a jail situation."[4]  Doc. 90 at 11.  Defendants suggest they lacked the required subjective knowledge because they "are not trained experts in human behavior," prison "is a dangerous place," and it is difficult to determine whether cellmates are merely bickering or whether one poses a real threat to the other.  *See* Doc. 90 at 11 ("To expect any corrections officer to correctly determine if cellmates are simply not getting along or actually pose a real and substantial threat to the other is not realistic under the facts before this Court.").

While the undersigned is aware of the difficulties faced by correctional officers, that does not justify granting summary judgment on the facts in this case.  Plaintiff did not make some vague report to Defendants about an inmate's generally problematic nature.  Instead, the evidence submitted by Plaintiff shows that when Plaintiff asked each Defendant to separate him from Mike, he specifically told them: (1) Mike suffered from psychological issues which made him paranoid and hostile to Plaintiff and other inmates; (2) those issues led to verbal altercations between Plaintiff and Mike which had "almost turned physically violent"; (3) Mike had a

---

[4] Defendants cite *Christie ex rel. estate of Christie v. Scott*, 923 F. Supp. 2d 1308, 1319 (M.D. Fla. 2013) for this proposition but that case did not involve a failure to protect claim.  Furthermore, the court made the "reality of jail situation" remark in the context of considering whether a company providing medical care to inmates at a jail should have had a policy requiring nurses to intervene with correctional officers.  *See id.* ("But a policy requiring that a nurse intervene with corrections officers whenever the nurse believes a detainee's health may be adversely affected by a corrections officer's actions does not reflect the reality of a jail situation.  It may be preferable that medical staff and corrections staff have a good working relationship so that concerns can be exchanged, but a formal policy requiring intervention is likely not appropriate.").  Thus, the case is inapposite.

Case No. 3:22cv4701-MCR-HTC

violent disposition and a history of acting on his paranoia, as he was serving a life sentence for attacking a law enforcement officer with a knife because he believed the officer "was plotting on him"; (4) Mike threatened to kill Plaintiff because Mike believed Plaintiff "was plotting on him"; and (5) Plaintiff feared for his safety. Doc. 15 at 9-10; Doc. 101 at 11-12. Despite Defendants' assertions that they do not recall these events, a reasonable jury could conclude based on Plaintiff's evidence that Defendants subjectively knew leaving Mike in a cell with Plaintiff posed a substantial risk of serious harm to Plaintiff.[5] *See Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1321 (11th Cir. 2016) (explaining that subjective knowledge can be inferred from circumstantial evidence and "the very fact that the risk was obvious") (citing *Farmer*, 511 U.S. at 842); *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (when assessing whether a prison official has subjective knowledge, a court should consider whether the official was aware "of a particularized threat or fear felt by [the] [p]laintiff").

The evidence is also sufficient for a jury to conclude Defendants recklessly disregarded the risk posed by Mike. After Plaintiff advised Jacobsen about his issues with Mike, Jacobsen told Plaintiff the inmates would either need to get along or kill

---

[5] Defendants note Plaintiff filed an informal grievance regarding Mike's mental health, his threats to kill Plaintiff, and his criminal history. Doc. 15 at 9. Because Plaintiff and Mike were not separated in response to the grievance, Defendants argue that, like them, other prison officials must have reasonably concluded Mike did not pose a substantial risk of harm to Plaintiff. Doc. 90 at 13. However, no such inference can be drawn because Plaintiff never received a response to the grievance and, thus, it is unclear whether officials ever considered the merits of the grievance.

each other and he would tell the other shifts not to move either inmate. Contrary to Defendants' argument, this statement (which the Court must accept as true at this stage), is evidence of more than just negligent conduct, particularly considering that neither Jacobsen nor Neel moved either inmate despite knowing about the risk posed by Mike. Defendants' failure to separate the inmates or conduct any investigation into the threats reported by Plaintiff could be viewed as more than grossly negligent.[6] *See Jackson v. Stevens*, 694 F. Supp. 2d 1334, 1338 (M.D. Ga. 2010) ("A prison official responds to a known risk in an objectively unreasonable manner if 'he knew of ways to reduce the harm but knowingly declined to act' or if 'he knew of ways to reduce the harm but recklessly declined to act.'") (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995)); *cf. Mosley v. Zachery*, 966 F.3d 1265, 1271-72 (11th Cir. 2020) ("In most other cases, based on what the prison official knows about the prisoners, their history, the threat, and the structure and administration of the prison, it is not an unreasonable response to see that the prisoners are separated and supervised while the official investigates the threat and looks into her options.").

---

[6] Defendants also assert Plaintiff admitted in his deposition "that Defendants had no intention of hurting Plaintiff but Jacobsen was just being a jerk by not allowing Plaintiff to dictate who would be his cellmate." Doc. 90 at 12. This assertion is incorrect. Plaintiff's statement that Jacobsen "wanted to be a jerk," Doc. 90-4 at 16, does not imply Plaintiff believed Jacobsen intended no harm. Indeed, when Plaintiff was directly asked whether he believed Jacobsen intended for him to get hurt, Plaintiff said "yes" – a portion of Plaintiff's testimony Defendants fail to reference in their argument. Doc. 90-4 at 17.

Case No. 3:22cv4701-MCR-HTC

Thus, a jury could return a verdict in Plaintiff's favor on his Eighth Amendment failure to protect claims.

## B. Qualified Immunity

Defendants also argue judgment should be entered in their favor because they are entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Myrick v. Fulton Cnty., Ga.*, 69 F. 4th 1277, 1300 (11th Cir. 2023). "Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citation omitted). "Plaintiffs can show that a constitutional right was clearly established in three ways: (1) citing case law with indistinguishable facts that clearly establishes the constitutional right; (2) pointing to a broad statement of principle within the Constitution, statute, or case law that clearly establishes the constitutional right; or (3) alleging conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Myrick*, 69 F. 4th at 1300.

Here, the undersigned concludes Defendants are not entitled to qualified immunity. Construing the facts in the light most favorable to Plaintiff, Defendants had subjective knowledge that Mike posed a substantial risk of serious harm to

Plaintiff, yet they failed to take any action to abate that risk. Such conduct cannot be considered objectively reasonable and it violates a constitutional right that was clearly established as of September 2020.[7] *See Nelson v. Tompkins*, — F.4th —, 2024 WL 57022, at *6 (11th Cir. 2024) (rejecting qualified immunity defense for failure to protect claim and holding it is clearly established that an officer violates his duty to protect prisoners "if he 'knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any [reasonable] action' to separate them") (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014)) (alteration in original). Thus, Defendants are not protected by qualified immunity.

## IV. Conclusion

Accordingly, it is RECOMMENDED:

1. That Defendants' motion for summary judgment, Doc. 90, be DENIED.

---

[7] In the qualified immunity section of their motion, Defendants assert they "had no idea of the inmates' violent history or possible behavioral issues." Doc. 90 at 19. Plaintiff, however, has presented evidence he told both Defendants about Mike's psychological problems and violent criminal history; and even Defendants' affidavits admit the dorm where the attack occurred is "primarily for the incarceration of inmates with emotional, behavioral, and similar issues," Doc. 90-1 at 2. Defendants also make somewhat inconsistent arguments; they suggest it would have been reasonable for them to ignore Plaintiff's verbal complaints about Mike because they never "witnessed any strange or threatening behavior by Mike," Doc. 90 at 21, but also that they do not know about inmates' behavioral issues because they have many responsibilities "with little time for interaction with the inmates," *id.* at 19-20. If Defendants did indeed have "little time for interaction with the inmates," then their failure to observe any threatening behavior from Mike would not provide a basis to reject Plaintiff's reports of Mike's threats.

Case No. 3:22cv4701-MCR-HTC

2. That this case be referred to the undersigned for further pretrial proceedings on Plaintiff's individual capacity Eighth Amendment failure to protect claims against Defendants Jacobsen and Neel.

At Pensacola, Florida, this 16th day of January, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.