UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD ALLEN BELL,

    Plaintiff,

v.                              Case No. 3:22cv4701-MCR-HTC

C.O. JACOBSEN, et al.,

    Defendants.
_____/

## ORDER

On January 16, 2024, the Magistrate Judge entered a Report and Recommendation ("R&R"), ECF No. 102, recommending denial of Defendants Drew Jacobsen and Justin Neel's Motion for Summary Judgment regarding Plaintiff Richard Allen Bell's deliberate indifference claim, ECF No. 90. The parties were furnished a copy of the R&R and afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). Defendants timely filed objections arguing that Bell has "put forth no evidence that Defendants acted with deliberate indifference to [Bell] and ***knowingly*** placed [Bell] at substantial risk of injury." ECF No. 103 at 3 (emphasis in original). Bell did not object to the R&R. The undersigned has made a *de novo* determination of Defendants' objections and concludes that the R&R should be adopted in full. *See* 28 U.S.C. § 636(b)(1) (stating when a magistrate judge issues a R&R on dispositive motions, a district judge "shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . [and] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *see also* Fed. R. Civ. P. 72(b)(3) (same).

The facts as stated in the R&R are incorporated by reference and will be restated here only as necessary to address Defendants' objections. As required at this stage of the proceedings, "the evidence and all reasonable inferences [are viewed] in the light most favorable to" Bell. *See Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007). In mid-February 2020, Bell was an inmate at Santa Rosa Correctional Institution ("SRCI"), a Florida state prison, and Jacobsen and Neel were correctional officers at the same facility.[1] Bell was housed in SRCI's "B" Dormitory ("B-Dorm"), "a close management confinement dormitory primarily for the incarceration of inmates with emotional, behavioral, and similar issues." *See* ECF Nos. 90-1, ¶ 6; 90-2, ¶ 6. In early August 2020, SRCI inmate Rashan Mike was assigned to be Bell's cellmate. Immediately after being placed in the cell, Bell observed Mike displaying significant psychiatric problems, including

---

[1] Prior to being housed at SRCI, Bell was incarcerated at Columbia Correctional Institution, where he was assaulted by a different cellmate in December 2016. Bell was then transferred to several facilities while he sought remedies for the December 2016 assault. In early February 2020, he was transferred to Charlotte Correctional Institution, where he was classified as a Close Management Level III inmate. Bell was then transferred to SRCI in mid-February 2020.

having prolonged conversations with himself and paranoid delusions that people, particularly B-Dorm inmates, were "plotting on him."

The situation between Bell and Mike quickly devolved because of Mike's psychiatric problems. Between August 1st and 20th, Bell and Mike had many verbal altercations that nearly resulted in physical violence between the cellmates. On approximately August 25th, Mike explained to Bell that he was serving a life sentence for assaulting a law enforcement officer with a knife because he believed the officer was "plotting on him," and showed Bell documents from his criminal case for assaulting the officer as proof of his violent disposition. The next day, Bell submitted a written grievance regarding his issues with Mike and requested to have either himself or Mike transferred to a different cell. Bell's grievance described Mike's psychiatric problems, extreme hostility, and threats to kill Bell if Mike found out that Bell was also "plotting on him." However, Bell never received a response to this grievance.[2] On approximately August 30th, Bell spoke with Jacobsen about the issues with his cellmate while Mike was out of earshot. During that conversation, Bell told Jacobsen that he feared for his safety because of Mike's severe psychiatric problems, criminal history, violent disposition, hostility, and deadly threats directed against Bell specifically. Jacobsen acknowledged that he was already aware of

---

[2] Bell does not assert that Jacobsen or Neel were responsible for reviewing or responding to this grievance.

Case No. 3:22cv4701-MCR-HTC

Mike's mental health issues. Bell also explained to Jacobsen that the cellmates had several altercations and requested for one of them to be moved, to which Jacobsen responded, "No. Neither of you are getting moved! Either get along or go ahead and kill each other. And I'm going to tell other shifts not to move you either." Jacobsen later told Mike that Bell said he was going to "fuck [Mike] up" if one of them was not moved to a different cell. According to Bell, Jacobsen wanted to instigate a fight between the cellmates and caused Mike to become more paranoid towards Bell.

On September 5th or 6th, Bell spoke with Neel about Mike's psychiatric and behavioral issues, his unanswered written grievance, his conversation with Jacobsen, and Jacobsen's alleged incitement of increasing conflict between the cellmates. Bell again asked to have one of the cellmates moved, but Neel responded that "we aren't doing any moves," walked away, and did nothing to minimize Bell's risk of harm from Mike. On September 9th or 10th, Jacobsen gave Mike an extra tray of food for dinner. Prison food trays are large, heavy objects, and ordinarily, inmates must return their trays soon after they finish eating. However, Mike informed Bell that Jacobsen allowed him to keep his tray overnight and return it in the morning. On approximately September 11th between 12:00 AM and 3:00 AM, Mike struck Bell repeatedly in the head with the food tray and dragged Bell's unconscious body from the top bunk, causing his head to slam against the floor. Bell was then taken to

Sacred Heart Hospital in Milton, Florida, and remained in a coma for two weeks. His injuries from Mike's attack included a broken jaw, a broken right eye socket, a massive trauma-induced cataract in his right eye, temporary vision loss, a broken nose, missing teeth, major hemorrhaging in his brain, permanent and temporary brain damage, memory loss, cognitive impairment, cranial fractures, multiple lacerations on his head and face, and nerve damage.  Sacred Heart nurses informed Bell that he died while on the way to the hospital and was lucky to be alive.  After partially recovering from the attack, Bell filed additional grievances, including one that mentions Jacobsen's conduct regarding the inmates' issues.  Bell also learned of more details about the attack from Isaac Day, a fellow B-Dorm inmate who allegedly witnessed the incident.[3]  Bell claims that Jacobsen and Neel conspired to have Mike harm him as retaliation for his previous lawsuit and grievances against corrections officers.

In their affidavits, Jacobsen and Neel claim they have no memory of Bell, Mike, or the events at issue, but would not ignore an inmate's safety if they were aware of his substantial risk of harm.  *See* ECF Nos. 90-1, 90-2.  They cite portions of Bell's deposition testimony as evidence establishing their lack of subjective awareness of Bell's risk of harm.  *See* ECF No. 90-4.  Defendants also submitted an affidavit from Christy Padgett, a litigation coordinator at SRCI, stating that Day was

---

[3] Bell has submitted two affidavits from Day.  *See* ECF No. 101 at 55-60.

not present at SRCI on September 11th because he had been transferred to a different institution two weeks prior to the assault nor was Jacobsen on duty on September 9th and 10th.  *See* ECF No. 90-3.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case.  An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citations omitted).  The applicable substantive law in this case regards Bell's claim of deliberate indifference for failure to protect.  To prevail on this claim, Bell must place evidence in the record establishing that he had an objectively substantial risk of serious harm.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).  Evidence of a substantial risk of serious harm must be specific and show that the risk presented "'a strong likelihood, rather than a mere possibility,' of grievous injury."  *Nelson v. Tompkins*, 89 F.4th 1289, 1296-97 (11th Cir. 2024) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).  Bell must also provide evidence that Defendants "actually (subjectively)" knew of his risk but failed to "respond to it in an (objectively) reasonable manner."  *Rodriguez*, 508 F.3d at 617; *see also Caldwell*, 748 F.3d at 1099-1101.  To do this, Bell must establish

that Defendants were both "aware of facts from which the inference could be drawn that substantial risk of serious harm exists," and "also dr[e]w the inference." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Additionally, a district court must treat a plaintiff's "verified complaint, sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response" as testimony when considering a summary judgment motion. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *see also United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.").

In their objections to the Magistrate Judge's R&R, Defendants largely rehash the argument raised in their Motion for Summary Judgment that Bell has not placed evidence in the record establishing Defendants' subjective knowledge that Mike posed a substantial risk to Bell.[4] The undersigned disagrees. As the Magistrate

---

[4] While Defendants object "to the R&R in its entirety," *see* ECF No. 103 at 3, they only meaningfully object to the Magistrate Judge's findings on their subjective knowledge and do not challenge her recommendation on their qualified immunity defense. Accordingly, the instant Order only addresses Defendants' objections to the Magistrate Judge's findings on deliberate indifference. The undersigned will adopt the Magistrate Judge's recommendation on qualified immunity. *See* 28 U.S.C. § 636(b) (requiring a party to make specific objections to portions of a magistrate judge's R&R); *see also Kohser v. Prot. Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) (stating a district court is not required to conduct a *de novo* review of portions of a summary judgment R&R in light of a party's "ineffectual generalized objection. . . . However, where a litigant fails to offer specific objections to a magistrate judge's factual findings, there is no requirement of *de novo* review.") (citing *Garvey v. Vaughn*, 993 F.2d 776, 779 & n.9 (11th Cir. 1993); *United States v. Perkins*, 787 F.3d 1329, 1343 (11th Cir. 2015) (holding a party waives the right to challenge a district court's finding on unobjected-to portions of an R&R).

Judge correctly notes in the R&R, Bell's verified complaint, sworn response to summary judgment, and sworn affidavit contain specific evidence of Defendants' subjective knowledge of the substantial risk of serious harm to Bell, including that Bell told Defendants about: (1) Mike's significant psychiatric issues and propensity for violence, especially when he believed people were "plotting on him;" (2) Mike's belief that Bell was "plotting on him," which was spurred on by Jacobsen telling Mike that Bell going to "fuck him up;" (3) Mike and Bell's verbal altercations that nearly resulted in physical violence; (4) Mike's death threats against Bell; and (5) Bell's fear for his safety because of Mike's increasingly threatening behavior towards him. *See* ECF No. 15 at 9-11; ECF No. 101 at 1-12, 99-107. In response, Defendants argue that Bell's evidence does not establish their subjective knowledge because: (1) they never personally observed Mike's psychiatric issues; (2) they did not know Mike had a history of paranoia and violence; (3) there is no record evidence that Mike posed a risk to Bell—or to his cellmates generally—prior to the attack; and (4) Bell only alleged general allegations that Mike threatened to kill him weeks before the attack occurred, and otherwise expressed concerns for his safety that were too vague to put Defendants on notice that Mike posed a substantial threat to Bell. ECF No. 103 at 5-11.

Viewing the evidence and all factual inferences in a light most favorable to Bell as required, the undersigned agrees with the Magistrate Judge that Bell has

produced specific and sufficient record evidence that would allow a reasonable jury to conclude that Defendants had subjective knowledge of his substantial risk of serious harm. As an initial matter, Bell's substantial risk of harm was obvious. Bell submitted evidence establishing that Mike displayed severe mental health issues, had a history of violence against people he believed were "plotting on him," and grew increasingly more hostile towards Bell based on the paranoid belief that Bell was "plotting on him." *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (finding an inmate had an objective risk of harm when the co-inmate who harmed him "had a history of violent outbursts and mental instability"); *see also Nelson*, 89 F.4th at 1297 (determining an inmate posed an objective risk of substantial harm to his cellmate because, on a previous occasion, the inmate had been violent towards a person with similar characteristics as his cellmate). Thus, Bell has unquestionably established a "strong likelihood" that Mike would seriously harm him.

Defendants also had subjective awareness of Bell's obvious risk of serious harm. Even if they never personally observed Mike's instability, Defendants were aware that Mike had mental and behavioral issues because he was housed in SRCI's B-Dorm. *See* ECF Nos. 90-1 ¶ 6, 90-2 ¶ 6; *see also Cottone*, 326 F.3d at 1358 (concluding prison guards had subjective knowledge that an inmate posed a substantial risk of serious harm to other inmates because the guards "knew they were monitoring mentally ill inmates, who were so mentally ill that they had been

assessed, classified, and separated for housing[.]"); *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1322-24 (11th Cir. 2016) (same). Bell also submitted evidence that Jacobsen acknowledged knowing about Mike's psychiatric problems and that Bell told both Defendants about Mike's paranoid delusions that caused him to become extremely hostile and threaten violence against Bell. Moreover, Bell stated that he told Defendants about the escalating conflict between the cellmates and that Jacobsen knew of the possibility of Bell's imminent serious harm as evident by Jacobsen telling Bell that the cellmates could "go ahead and kill each other." Bell also stated that he told Neel about Jacobsen's provocative comments and the details of the cellmates' issues. The Eleventh Circuit has found that evidence like Bell's is enough to establish Defendants' subjective knowledge. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence [and] . . . from the very fact that the risk was obvious."); *Nelson*, 89 F.4th at 1297-98 (holding evidence that an officer knew of an inmate's previous violence against a particular group supported finding that the officer had subjective knowledge that the inmate posed a substantial risk of serious harm to his cellmate who shared that group's qualities); *see also Rodriguez*, 508 F.3d at 618-19 (finding an inmate's evidence that he verbally informed prison officials on multiple

occasions about specific threats to his safety prior to an attack by a fellow inmate established the officials' subjective knowledge).

Nonetheless, Defendants still dispute their subjective knowledge by arguing that even their superiors, who are responsible for inmates' cell assignments, did not perceive Mike to be a substantial risk of harm to Bell because they did not separate them. The undersigned is not persuaded. *See Nelson*, 89 F.4th at 1298-99 (Deliberate indifference "'does not turn on the ultimate placement or classification decision.' It is enough to prove that the official 'had the authority to make . . . *recommendations* with respect to placement and classification decisions.'") (emphasis and alterations in original) (quoting *Rodriguez*, 508 F.3d 611, 624 n.20). Defendants also assert that Bell's statements to Defendants about his concern for his safety were vague. As detailed above, Bell gave Defendants many specific examples of his substantial risk of serious harm, and "[t]he Supreme Court also has expressly rejected the argument that an injured inmate must have 'expressed' to prison officials a 'concern for his safety.'" *Nelson*, 89 F.4th at 1298 (quoting *Farmer*, 511 U.S. at 848) ("[T]he failure to give advance notice [of a cellmate attack] is not dispositive.") (alterations omitted).[5]

---

[5] Defendants heavily rely on *Carter v. Galloway*, 352 F.3d 1346 (11th Cir. 2003), but that case is factually distinguishable from the events that occurred with Bell. In *Carter*, the plaintiff brought a deliberate indifference claim against corrections officers for failing to protect him from an assault by his cellmate. The plaintiff's cellmate had a history of violence and mental instability but never previously attacked a cellmate. The Eleventh Circuit affirmed the district court's grant of summary judgment in favor of the corrections officers because they only had a "mere awareness

Case No. 3:22cv4701-MCR-HTC

Defendants further claim, without citing any case law, that ignoring Bell's statements that Mike threatened to kill him does not meet the standard for deliberate indifference. However, Bell submitted evidence that Defendants did more than just ignore his pleas. In response to Bell's specific information detailing why Mike posed a substantial risk of harm, Jacobsen refused to move either inmate; said that the cellmates could "get along or go ahead and kill each other" and that he would advise other officers to refuse Bell's move request; and incited further conflict by telling Mike that Bell was going to "fuck him up." Similarly, Neel refused Bell's move request and failed to act upon Bell's specific safety concerns. The undersigned agrees with the Magistrate Judge's finding that this conduct is objectively unreasonable and meets the standard for deliberate indifference. *See Rodriguez*, 508 F.3d at 620 ("An official responds to a known risk in an objectively unreasonable manner if 'he knew of ways to reduce the harm but knowingly declined to act' or if 'he knew of ways to reduce the harm but recklessly declined to act.'") (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995)).

---

of [the inmate's] generally problematic nature" considering the plaintiff never told the officers that he feared his cellmate or that his cellmate made clear threats toward him. *Id.* 1349-50. That is not the case here. Indeed, Bell informed Defendants that Mike suffered from paranoid delusions, was extremely hostile and threatening to Bell, and that the cellmates had multiple altercations that nearly turned violent. This evidence is specific enough to put Defendants on notice that Mike posed a substantial risk of serious harm to Bell. *See Caldwell*, 748 F.3d at 1100-02 (11th Cir. 2014) (distinguishing *Carter* and denying summary judgment for corrections officers when the plaintiff provided specific record evidence establishing the officers' subjective knowledge).

Case No. 3:22cv4701-MCR-HTC

Having considered the R&R, and all timely filed objections, I have determined that there is a genuine dispute of the case's material facts, Defendants are not entitled to summary judgment, and the Report and Recommendation should be adopted.

Accordingly, it is now **ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation (ECF No. 102) is adopted and incorporated by reference in this Order.

2. Defendants' motion for summary judgment (ECF No. 90) is DENIED.

3. This case is referred to the assigned Magistrate Judge for further pretrial proceedings on Plaintiff's individual capacity Eighth Amendment failure to protect claims against Defendants Jacobsen and Neel.

**DONE AND ORDERED** this 9th day of August 2024.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**